## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JASON ALAN RUDD,

        Plaintiff,

v.

RENTGROW, INC., TRANS UNION
RENTAL SCREENING, INC.,

        Defendants.

Case No.: 8:24-cv-131


**JURY TRIAL DEMANDED**

## COMPLAINT

Jason Alan Rudd ("Plaintiff" or "Mr. Rudd") by and through his counsel brings the following Complaint against RentGrow, Inc., ("Defendant RentGrow"), and Trans Union Rental Screening, Inc., ("Defendant Trans Union") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report that Defendant Trans Union published to Defendant RentGrow, and a tenant screening report that Defendant RentGrow published to Plaintiff's potential landlord, which falsely portrayed Plaintiff as twice previously evicted.

## INTRODUCTION

1.    This is an individual action for damages, costs, and attorney's fees brought against Defendants pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.     Defendants are each a consumer reporting agency ("CRA") that compile and maintain files on consumers on a nationwide basis.  They sell consumer reports, also known as tenant screening reports, generated from their databases and furnish these tenant screening reports to mortgage brokers, landlords, other CRAs looking to report on a consumer, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3.     Defendant RentGrow assembled and published an inaccurate tenant screening report to Plaintiff's prospective landlord, which included a civil eviction record that did not belong to Plaintiff.

4.     Defendant RentGrow obtained this civil eviction record about Plaintiff from Defendant Trans Union. Defendant Trans Union assembled and published an inaccurate tenant screening report to Defendant RentGrow, which included a civil eviction record that did not belong to Plaintiff.

5.     In fact, Plaintiff has never been subject to a civil eviction action.

6.     The record reported by Defendants *does not* belong to Plaintiff, rather it belongs to separate and unrelated consumer named Jason Weilyn Rudd.

7.     Plaintiff's prospective landlord denied Plaintiff's housing application after receiving the tenant screening report from Defendant RentGrow, in which Defendant RentGrow published the civil eviction record belonging to Jason Weilyn Rudd.

8.     Plaintiff disputed the inaccurate, stigmatizing information contained within the tenant screening report, and Defendant RentGrow failed to conduct a reasonable reinvestigation, or any investigation at all, and accordingly failed to delete the disputed information that did not belong to Plaintiff.

9.     Defendants' inaccurate reporting could have easily been avoided had Defendants performed a cursory review of the widely available underlying public court records pertaining to the civil eviction records prior to Defendant Trans Union publishing the defamatory information to Defendant RentGrow, and Defendant RentGrow further publishing the information to Plaintiff's prospective landlord, even after being notified of the dispute.

10.    Neither Defendant employs reasonable procedures to assure the maximum possible accuracy of the information they report regarding consumers. Defendants' failures to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

11.    Defendants committed these violations pursuant to their standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

12.    Defendants' inaccurate report cost Plaintiff the ability to rent the apartment unit that was suitably accommodating of his needs, causing him physical

injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

13.     As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

14.     As a result of both the Defendants' conduct, action, and inaction, Plaintiff brings claims against Defendants for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and against only Defendant RentGrow for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – namely that which belonged to another consumer – was inaccurate and for failing to delete the disputed information from the tenant screening report, in violation of the FCRA, 15 U.S.C. § 1681i.

## PARTIES

15.   Jason Alan Rudd ("Plaintiff" or "Mr. Rudd") is a natural person residing in Bradenton, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.   Defendant RentGrow, Inc., ("Defendant RentGrow") is a Delaware corporation doing business throughout the United States, including the State of Florida and in this District, and has a principal place of business located at 400 5th Avenue, Suite 120, Waltham, Massachusetts 02451. RentGrow can be served at its registered agent c/o Corporation Service Company at 84 State Street Boston, MA 02109.

17.   Among other things, Defendant RentGrow sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant.  These reports are provided in connection with a business transaction initiated by the consumer.

18.   Defendant Trans Union Rental Screening, Inc., ("Defendant Trans Union") is a Delaware corporation doing business throughout the United States, including the State of Florida and in this District, and has a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union

can be served at its registered agent c/o Illinois Corporation Service Company at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

19.     Among other things, Defendant Trans Union sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant.  These reports are provided in connection with a business transaction initiated by the consumer.

20.     Defendants are each a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, they regularly engage in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and use interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## **JURISDICTION AND VENUE**

21.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

23.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.   Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

24.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

25.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

26.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

27.    Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the ones Defendants prepared in Plaintiff's name.

28.    The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

29.    In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendants, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

30.    The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

31.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

32.    Defendants disregarded their duties under the FCRA with respect to Plaintiff's tenant screening report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

33.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including eviction records.  As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

34.     Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated criminal record data.  The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

35.     Tenant Screening companies, like Defendants, collect millions of records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

36.     Given that Defendants are in the business of selling tenant screening reports, Defendants should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

37.     Defendants place their business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendants to

produce reports containing information that are inaccurate and incomplete than it is for Defendants to exert proper quality control over the reports prior to their being provided to Defendants' customers.

38.     Defendants report such erroneous and incomplete information because they want to maximize the automation of their report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

39.     Defendants charge their customers the same price for reports that are grossly inaccurate as they do for accurate reports.

40.     Appropriate quality control review of Plaintiff's report would have made clear that Defendants were reporting information belonging to another consumer.

41.     As providers of tenant screening reports, Defendants should be aware of the FCRA requirements and are likely a member of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

**Plaintiff Applies for an Apartment with The Park At Preston ("Park")**

42.     Plaintiff, with his mother, undertook to move to Texas and live together, in order to be closer to Plaintiff's children who were respectively thirteen- and nineteen-years-old.

43.    On or about December of 2023, Plaintiff began searching for a new apartment in Texas.  Specifically, Plaintiff was searching for an apartment that was in a safe neighborhood, clean, within his budget, and within a short distance of his children's home.

44.    On December 14, 2023, Plaintiff submitted an online application to a one-bedroom apartment in Park, after reviewing photos and online information about the apartment complex.

45.    Plaintiff found this apartment to be the only one he and his mother liked, which accommodated their desires of affordability, proximity to the children, cleanliness, and safety.

46.    Plaintiff further liked the location as Plaintiff grew up in that area, in addition to the amenities that Park offered.

**Defendant Trans Union Published an Inaccurate Tenant Screening Report to Defendant RentGrow**

47.    Defendant RentGrow contracts with Defendant Trans Union to provide them consumer reports on the prospective tenants landlords inquire about, in order for Defendant RentGrow to publish such reports to the inquiring landlords.

48.    On or around December 14, 2023, Defendant Trans Union sold a tenant screening report about Plaintiff to Defendant RentGrow, wherein Defendant Trans Union published information including a compilation of Plaintiff's civil records history.

49.     The tenant screening report of that Defendant Trans Union provided is a consumer report regulated by the FCRA.

50.     Within that tenant screening report, Defendant Trans Union published inaccurate information about Plaintiff.

51.     Specifically, Defendant Trans Union reported two evictions from Tarrant County, Florida.

52.     The civil eviction record published by Defendant Trans Union about Plaintiff to Defendant RentGrow *did not* belong to Plaintiff.

53.     Specifically, it is indisputable that prior to furnishing the report about Plaintiff to Park, Defendant Trans Union failed to consult widely available public court records in Tarrant County, Florida, which indicate that the aforementioned records do not belong to Plaintiff.

54.     A cursory review of the widely available underlying public court records confirms that the records belong to an individual named Jason Weilyn Rudd ("Evictee Weilyn").

55.     Defendant Trans Union's unreasonable or non-existent procedures allowed Defendant Trans Union to publish a report about Plaintiff wherein Defendant Trans Union mixed the rental history of Evictee Weilyn into that same report.

56.    Had the Defendant Trans Union actually consulted or obtained the widely available underlying public court records, it would have seen the obvious discrepancies between Evictee Weilyn and Plaintiff.

57.    The discrepancies that should have caused Defendant Trans Union to realize Plaintiff is not the same person as Evictee Weilyn include the following:

(a)    Plaintiff's legal name is "Jason Alan Rudd" (middle name of Alan) but the name of the individual subject to the civil eviction record is identified in the underlying public court records as Jason Weilyn Rudd (distinctive middle name of Weilyn);

(b)    Plaintiff's date of birth is February of 1980, yet the underlying public court records indicate that Evictee Weilyn's date of birth is April of 1980;

(c)    Plaintiff's address history confirms that Plaintiff was never associated with the address of 7904 Copper Canyon Drive Arlington, Texas 76002; and,

(d)    Plaintiff's Social Security number is entirely different than that of Evictee Weilyn's.

58.    The sole reason the inaccurate civil eviction record was reported as belonging to Plaintiff was that Defendant Trans Union failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published

within the tenant screening reports it sold about Plaintiff to Defendant RentGrow which then sold same to Plaintiff's prospective landlord.

59.    Had Defendant Trans Union employed reasonable procedures, it would have discovered that the inaccurate, stigmatizing civil eviction record belong to Evictee Weilyn with a different middle name than Plaintiff, a different date of birth, different address information, and a different Social Security Number.

60.    In preparing and selling a consumer report about Plaintiff, wherein Defendant Trans Union published to Defendant RentGrow inaccurate information about Plaintiff, Defendant Trans Union failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

## Defendant RentGrow Published an Inaccurate Tenant Screening Report to Park

61.    Park contracted with Defendant RentGrow to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

62.    On December 14, 2023, Defendant RentGrow sold a tenant screening report about Plaintiff to Park, wherein Defendant RentGrow published information including a compilation of Plaintiff's credit history and civil records history.

63.    The tenant screening report, identified as "Screening Report" by Defendant RentGrow, is a consumer report regulated by the FCRA.

64.     Within that tenant screening report, Defendant RentGrow published inaccurate information about Plaintiff.

65.     Specifically, the "Premium National Civil Court Records Search" section of the tenant screening report included the following civil court record from Tarrant County, Florida:

| PREMIUM NATIONAL CIVIL COURT RECORDS SEARCH | | |
|---|---|---|
| **DATE REQUESTED** | **DATE COMPLETED** | **STATUS** |
| 12/14/2023 10:16 AM | 12/14/2023 10:16 AM | Does Not Meet Property Requirements<br>Civil Court Records Found |

**Court:** TARRANT JP PCT 7 MANSFIELD
**Case #:** JP0719E00094487
**Plaintiff:** HPA TEXAS SUB 2017 1 LLC CO PATHLIGHT PROPERTY MGMT
**Address:** 7904 COPPER CANYON DR, ARLINGTON TX 76002
**Defendant:** RUDD, JASON
**Filing Date:** 10/30/2019
**Amount:** 2,870.00
**Judgement:** PLAINTIFF
**Judgement Date:** 11/14/2019
**Plaintiff Atty:** PRO PER

**Court:** TARRANT JP PCT 7 MANSFIELD
**Case #:** JP0719E0091993
**Plaintiff:** HPA TEXAS SUB 2017 1 LLC CO PATHLIGHT PROPERTY MGT
**Address:** 7904 COPPER CANYON DR, ARLINGTON TX 76002
**Defendant:** RUDD, JASON
**Filing Date:** 03/26/2019
**Amount:** 0.00
**Judgement:** PLAINTIFF
**Judgement Date:** 04/12/2019
**Plaintiff Atty:** PRO PER

66.     The civil eviction record published by Defendant RentGrow about Plaintiff to Park ***did not*** belong to Plaintiff.

67.     Defendant RentGrow published inaccurate information about Plaintiff. The above-referenced information should not have been included in any tenant screening report about Plaintiff.

68.     Specifically, it is indisputable that prior to furnishing the report about Plaintiff to Park, Defendant RentGrow failed to consult widely available public court

records in Tarrant County, Florida, which indicate that the aforementioned records do not belong to Plaintiff.

69.     A cursory review of the widely available underlying public court records confirms that the records belong to an individual named Jason Weilyn Rudd (hereinafter "Evictee Weilyn"). Defendant RentGrow's unreasonable or non-existent procedures allowed Defendant RentGrow to publish a report about Plaintiff wherein Defendant RentGrow mixed the rental history of Evictee Weilyn into that same report.

70.     Had Defendant RentGrow  actually consulted or obtained the widely available underlying public court records, it would have seen the obvious discrepancies between Evictee Weilyn and Plaintiff.

71.     The discrepancies that should have caused Defendant RentGrow to realize Plaintiff is not the same person as Evictee Weilyn include the following:

(a) Plaintiff's legal name is "Jason Alan Rudd" ( middle name of Alan) but the name of the individual subject to the civil eviction record is identified in the underlying public court records as Jason Weilyn Rudd (distinctive middle name of Weilyn);

(b) Plaintiff's date of birth, which was provided to Defendant RentGrow prior to publishing the tenant screening report,

February of 1980, yet the underlying public court records indicate that Evictee Weilyn's date of birth is April of 1980;

(c) Plaintiff's address history confirms that Plaintiff was never associated with the addres s of 7904 Copper Canyon Drive Arlington, Texas 76002; and,

(d) Plaintiff's Social Security number, which was provided to Defendant RentGrow is contained on the face of the tenant screening report is entirely different than that of Evictee Weilyn's.

72.    The sole reason the inaccurate civil eviction record was reported as belonging to Plaintiff was that Defendant RentGrow failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening reports it sold about Plaintiff to Plaintiff's prospective landlord.

73.    Had Defendant RentGrow followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing civil eviction record belonged to Evictee Weilyn with a different middle name than Plaintiff, a different date of birth, different address information, and a different Social Security Number.

74.    In preparing and selling a consumer report about Plaintiff, wherein Defendant RentGrow published to Plaintiff's prospective landlord inaccurate

information about Plaintiff, Defendant RentGrow failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Park Denies Plaintiff's Housing Application

75.     On December 15, 2023, Plaintiff called Park to inquire of the status of Plaintiff's housing application.

76.     During this phone call Plaintiff was informed by Park that Plaintiff's housing application was denied as a direct result of the civil eviction record reported by Defendant RentGrow.

77.     Shortly thereafter, Plaintiff obtained a copy of the tenant screening report and was shocked and humiliated upon reviewing and realizing that the civil eviction record of Evictee Weilyn were published in the tenant screening report Defendant RentGrow sold about Plaintiff to Park.

78.     On December 17, 2023, Plaintiff received a denial email from Park with the Adverse Action letter.

79.     On December 20, 2023, Plaintiff contacted Park and informed them that the civil eviction record did not belong to him, and provided information to support this position.

80.     However, Park informed Plaintiff that the letter was not enough to override the tenant screening report.

81.     Plaintiff was very panicked, confused, and concerned about the impact of the records of Evictee Weilyn being reported on the tenant screening report – specifically, the impact of the same on his future.

82.     Specifically, Defendants RentGrow matched Plaintiff and Evictee Weilyn and published the civil eviction record of Evictee Weilynonto the tenant screening report about Plaintiff and sold that report to Plaintiff's prospective landlord.  This exculpatory public record information was widely available to Defendant RentGrow prior to publishing Plaintiff's tenant screening report to Park, but Defendant RentGrow failed to perform even a cursory review of such information.

83.     Furthermore, Defendant Trans Union matched Plaintiff and Evictee Weilyn and published the civil eviction record of Evictee Weilyn onto the tenant screening report about Plaintiff and sold that report to Defendant RentGrow which then sold same to Plaintiff's prospective landlord.  This exculpatory public record information was widely available to Defendant Trans Union prior to publishing Plaintiff's tenant screening report to Defendant RentGrow, but Defendant Trans Union failed to perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Tenant Screening Report**

84.     On December 15, 2023, desperate to secure housing with Park and riddled with worry over the far-reaching impacts of the inaccurate information,

Plaintiff disputed the inaccurate information with Defendant RentGrow.  Plaintiff disputed via telephone with Defendant RentGrow.

85.    Plaintiff identified himself and provided information to Defendant RentGrow to support his dispute.

86.    Plaintiff specifically disputed the civil eviction record of Evictee Weilyn.

87.    Plaintiff specifically stated that the civil eviction records of Evictee Weilyn do not belong to Plaintiff.

88.    Plaintiff specifically asked Defendant RentGrow to investigate and delete Evictee Weilyn's records from any tenant screening report about Plaintiff.

### Defendant RentGrow Fails to Conduct a Reasonable Reinvestigation and Correct Plaintiff's Tenant Screening Report

89.    As of January 15, 2024, Defendant RentGrow failed to issue a dispute response to Plaintiff's December 15, 2023, dispute.

90.    Defendant RentGrow failed to issue a corrected tenant screening report to Park.

91.    Despite Plaintiff's dispute, Defendant RentGrow failed to conduct a reasonable reinvestigation of Plaintiff's December 15, 2023, dispute and failed to delete the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

92.    Because Defendant RentGrow failed to issue a corrected tenant screening report, Park did not reconsider its decision to deny Plaintiff's housing application.

93.    But for the Defendants' inaccurate tenant screening reports, Plaintiff's housing application would have been approved, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant RentGrow's erroneous reporting.

94.    Defendants' false reports cost Plaintiff a housing opportunity that met his needs, including those attendant to affordability, safety, and proximity to his children.

95.    Plaintiff was looking forward to living at Park because it was in a safe neighborhood, provided desirable amenities, and was located around where Plaintiff was raised.

96.    Due to Defendants RentGrow's and Trans Union's unreasonable procedures and due to Defendant RentGrow's shoddy, if any, dispute reinvestigation, and despite Plaintiff's continued efforts to seek housing, Plaintiff was forced to delay his move to Texas, and lost substantial and valuable holiday moments with his children.

97.    The injuries suffered by Plaintiff as a direct result of the Defendants' erroneous reporting are the type of injuries that the FCRA was enacted to address.

Under common law, Defendants' conduct would have given rise to causes of action based on defamation and invasion of privacy.

98.     As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (Against Defendants RentGrow and Trans Union)

99.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

100.    Defendants are each a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

101.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

102.    At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

103.   Defendants RentGrow and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report they sold about Plaintiff as well as the information they published within the same.

104.   As a result of Defendants RentGrow's and Trans Union's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate  reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

105.   Defendants RentGrow and Trans Union willfully violated 15 U.S.C. § 1681e(b) in that their conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

106.   Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendants RentGrow and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Against Defendant RentGrow)**

107.   Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

108.   The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

109.   The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

110.   On at least one occasion December of 2023, Plaintiff disputed the inaccurate information with Defendant RentGrow and requested that Defendant RentGrow correct and/or delete the inaccurate information in the tenant screening report that is patently inaccurate, misleading, and highly damaging to him, namely, stating that Evictee Weilyn records belong to Plaintiff.

111.   In response to Plaintiff's dispute, Defendant RentGrow failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently

false, logically inconsistent, and damaging information to remain in the tenant screening report and refused to correct the tenant screening report at issue.

112.   Defendant RentGrow violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject tenant screening report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

113.   As a result of Defendant RentGrow's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

114.   Defendant RentGrow willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

Case 8:24-cv-00131   Document 1   Filed 01/12/24   Page 26 of 27 PageID 26

115.   Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant RentGrow in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.   Determining that Defendants negligently and/or willfully violated the FCRA;

ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.   Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 12th day of January 2024

**CONSUMER ATTORNEYS**

*/s/ Catherine Tillman*

Catherine Tillman, Esq., (FL Bar No. 0057663)
8245 N. 85th Way
Scottsdale, AZ 85258
T : (941) 263-7310
F: (718) 715-1750
E: ctillman@consumerattorneys.com

*Attorney for Plaintiff*
*Jason Alan Rudd*